AO-106 (Rev: 06/09)-Application for Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

JUL 18 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of )
**3333 North Atlanta Avenue,** )  Case No. 25-mj-604-CDL
**Tulsa, Oklahoma** )
) **FILED UNDER SEAL**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) | Attempted Possession of Methamphetamine with Intent to Distribute |
| Title 21 U.S.C. 856(a)(1) and 856(b) | Maintaining a Drug Involved Premises |

The application is based on these facts:

**See Affidavit of DEA SA Wyatt Huffman, attached hereto.**

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Wyatt Huffman, DEA SA
*Printed name and title*

Subscribed and sworn to by phone.

Date: July 18, 2025

_____
*Judge's signature*

City and state: Tulsa, Oklahoma

Christine D. Little, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of<br>**3333 North Atlanta Avenue,**<br>**Tulsa, Oklahoma** | Case No. _____<br><br>**FILED UNDER SEAL** |

**Affidavit in Support of an Application**
**Under Rule 41 for a Warrant to Search and Seize**

I, Special Agent Wyatt Huffman, being first duly sworn under oath, depose and state:

**Introduction and Agent Background**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search **3333 North Atlanta Avenue, Tulsa, Oklahoma**, Northern District of Oklahoma, as further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a DEA Special Agent since July of 2024. I am currently assigned to the Tulsa Resident Office (TRO), in Tulsa, Oklahoma, and I am an "investigative or law enforcement officer" of the United States as defined in 21 U.S.C. § 878(a). I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to

request such a warrant. I previously attended college at Sam Houston State University in Huntsville, Texas and received a Bachelor of Science in Criminal Justice.

3. During my studies at Sam Houston State University as well as the DEA Academy, I learned about different drug trafficking techniques and lengths traffickers go to in order to remain undetected by law enforcement officials from professors and instructors who had years of experience investigating Drug Trafficking Organizations around the world. I have gained a considerable amount of knowledge about drug trafficking organizations and their members. I have learned how individuals who are involved in the distribution of controlled dangerous substances maintain records and secret monies derived from the sale of illegal drugs.

4. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience.

2

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge of the facts and circumstances of this matter.

6. I am aware through my education, training and experience, as well as information from other investigators with extensive experience in drug trafficking investigations mail delivery services, such as UPS, is a common method for drug traffickers to ship their product. Mail delivery services, such as UPS is used by drug dealers for not only shipping illegal drugs, but also for shipping the proceeds and money from illegal drug sales and purchases.

7. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal participation in the investigation described herein, knowledge obtained from other law enforcement officers, and conversations with others who have personal knowledge of the events and circumstances described herein.

8. The property to be searched is described in Attachment A. Attachment B is a list of items for which authority is sought to search and seize. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation. However, I have set forth the

facts that I believe are essential to establish the necessary foundation and probable cause to support the Application for Search Warrant and Search Warrant for the property to be searched described in Attachment A.

9. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) - Attempted Possession of Methamphetamine with Intent to Distribute and Title 21 U.S.C. 856(a)(1) and 856(b) – Maintaining a Drug Involved Premises, will be located at **3333 North Atlanta Avenue, Tulsa, Oklahoma**, Northern District of Oklahoma, as further described in Attachment A.

## Jurisdiction

"[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

10. The requested search is related to the following violations of federal law:

   a. Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) – Attempted Possession of Methamphetamine with Intent to Distribute; and

   b. Title 21, U.S.C. §§ 856(a)(1) and 856(b) – Maintaining a Drug Involved Premises.

11. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

4

## Drug Offenses Background

12. I have had extensive experience in debriefing defendants, co-conspirators, witnesses and informants who have been involved in unlawful drug trafficking and who have had personal experience involving the techniques and methods by which drug traffickers maintain records to identify and locate other drug conspirators, the amounts of drugs distributed and to whom the drugs are distributed, the moneys owed and paid for drugs, as well as the techniques and methods by which drug traffickers acquire, spend, convert, transport, distribute and conceal the proceeds they derive from unlawful drug trafficking.

13. My participation in drug trafficking investigations has resulted in both the successful prosecution of numerous individuals and the forfeiture of assets purchased with the proceeds from unlawful drug trafficking, as well as assets used to facilitate said violations. In connection with drug trafficking investigations, I have participated in and/or executed several search and seizure warrants at residences, stash houses used as storage and distribution points for controlled substances, and other locations.

14. Materials searched for and recovered in those locations have included various controlled substances, including cocaine, methamphetamine, and marijuana; drug paraphernalia such as scales, papers and drug packaging materials; books and records reflecting sales, the transfer or transportation of drugs and amounts of money owed for drugs; records reflecting the names, addresses, and telephone numbers of co-conspirators; sales receipts and other records reflecting the expenditure of moneys

that are the proceeds from unlawful drug distribution; currency and money wrappers; and various valuable assets (i.e., automobiles) purchased with the proceeds of unlawful drug trafficking.

15. Based on my background, training, and experience, as previously detailed in this affidavit, I know:

    a. Drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement. In addition, drug traffickers often use rental vehicles to prevent detection and identification by law enforcement and to prevent forfeiture of the vehicles;

    b. Even though these assets are in the names of other people, the drug traffickers continue to use these assets and exercise dominion and control over them;

    c. Drug traffickers must maintain a large amount of U.S. currency in order to finance their ongoing narcotic activities;

    d. Drug traffickers maintain books, computer data and programs, records, receipts, notes, ledgers, airline tickets, money orders, cashier's checks, records of wire transfers, records of purchase of vehicles and property and other papers relating to the importation, ordering, sale, transportation, possession, purchase, and transfer of controlled substances;

e. Drug traffickers keep records that are usually recorded in units of weight and monetary value, associated with pounds and kilograms or other such units of measurement and dollar amounts to assist them in their business, records to keep track of amounts "fronted" to customers and money owed by customers for amounts "fronted" by the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained where drug traffickers have ready access to them, i.e., on their persons, in their vehicles, or in or about their residences or place of business, these documents are often kept in code to secret their meaning from law enforcement;

f. It is common for drug traffickers to secrete contraband, proceeds of drug sales, financial instruments, precious metals, jewelry, and other items of value, and/or proceeds of drug transactions, records or evidence of drug transactions relating to transferring, secreting, or spending of large sums of money made from engaging in narcotic trafficking in secure locations on their persons, within their vehicles, or within or around their residences or businesses for ready access or to conceal them from law enforcement authorities;

g. When drug traffickers amass proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize some if not all of the following means; foreign and domestic

banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations, and business frauds.

    h. Drug traffickers commonly maintain names, addresses or telephone numbers in books or papers for their associates in the trafficking organization; these books or papers include such items as address books, telephone messages, in and correspondence, etc. Shorthand and/or code names are sometimes used for buyers, co- conspirators, sellers, weights, and other details of the drug traffickers;

    i. Drug traffickers secrete and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences, and the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that the courts have recognized that unexplained wealth is probative of crimes motivated by greed, in particular, trafficking in drugs;

    j. The aforementioned books, records, receipts, notes, ledgers, and other items mentioned above, are commonly maintained where the drug traffickers have ready access to them and are maintained often long periods of time after the actual event reflected in the documents.

k. Drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product. These traffickers usually maintain these photographs in their possession;

l. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing narcotics; and these paraphernalia include but are not limited to scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m. That drug traffickers usually keep paraphernalia, equipment, and supplies for cultivating, and distribution of the marijuana, and that these items include, but are not limited to, scales, plastic bags, cutting implements, growing pots, insecticides, fertilizers, and other growing supplies;

n. The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including trafficking in controlled substances;

o. Dealers in narcotics often keep hand guns, ammunition, and other weapons in their residences (including outbuildings), businesses, and automobiles to safeguard supplies of drugs and the fruits of narcotics dealings;

p. Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement officers and, in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names and that they maintain such

9

documents in evidence of their false identities in their residences (including outbuildings), businesses, and automobiles together with evidence of their true identities;

q. Drug traffickers commonly conduct a significant amount of their business by using telephone systems and normally make frequent calls to conduct, direct, supervise, and coordinate their activities;

r. Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles.

**Probable Cause**

16. On July 16, 2025, DEA Special Agent Kaitlyn Sanders received a phone call from UPS Security Investigator David P. Ortega. SA K. Sanders was advised the UPS Corporate Security Targeting Center Team reached out to him to assist in intercepting a package suspected to contain narcotics. The package tracking number was 1Z92E3381295594998, herein referred to as "**Subject Parcel**". The package was shipped UPS 3 DAY SELECT with a delivery date of 07/17/2025 and the delivery address was listed as Kay Wilson, 3333 North Atlanta Avenue, Tulsa, OK 74110. The package had been sent from Postal Plus, 3309 E. Hillcrest Blvd., Inglewood, CA 90301.

17. On July 17, 2025, DEA Tulsa TRO investigators were notified the **Subject**

10

**Parcel** was at a UPS Hub located at 5805 S. 118th East Avenue, Tulsa, Oklahoma. DEA investigators and OHP Trooper Short # 823 and his narcotics detector dog (K-9) "RIP" responded to the location. Four boxes of like size and the Subject Parcel was placed on the floor of the facility. OHP Trooper Short #823 ran "RIP" over the boxes. The Subject Parcel was the second box from the east. OHP Trooper Short # 823 advised your affiant "RIP" gave an alert (odor response) on the Subject Parcel. An alert is an odor response, which is an indication the odor of a controlled dangerous substance, (heroin, cocaine, and or methamphetamine) was emanating from the Subject Parcel. "RIP" did not give an alert to any of the other boxes. OHP Trooper Short # 823 advised "RIP" has been in service as a certified police narcotics detection K-9 since August of 2023. "RIP" holds an Oklahoma State certification number of 0136970-D004144. "RIP" is trained and certified to alert to the odor of the following controlled dangerous substances: heroin, cocaine, and methamphetamine. RIP's certification was administered by a State of Oklahoma CLEET Drug Dog Evaluator, certifying to the State of Oklahoma's Canine Team standard. OHP Trooper Short #823 works on a regular basis with "RIP", consistently and systematically verifying his K-9's abilities to detect controlled dangerous substances. OHP Trooper Short #823 advised that based on RIP's alert, he believes that the **Subject Parcel** contains illegal drugs, in violation of state and federal law.

18. DEA investigators observed the shipping label for the **Subject Parcel**. The

11

**Subject Parcel** is expected to be delivered on July 17, 2025. The parcel is listed to be delivered to Kay Wilson, phone number 918-998-7774, address 3333 N. Atlanta Ave, Tulsa, OK 74110-1505. Investigators located an owner name of Kaysondra Wilson on the County Assessor's website for the address of 3333 N. Atlanta Avenue Tulsa, Oklahoma. Investigators learned Thomas Covington is currently paying utilities for 3333 N. Atlanta Avenue Tulsa, Oklahoma. Phone number 310-749-0385 is listed on the utilities for 3333 N. Atlanta Avenue Tulsa, Oklahoma. A search of Cash App shows Tyrone Hooks ($TyHooksr65) is utilizing 310-749-0385. As a result of this preliminary information, investigators are unable to identify who is actually living at 3333 N. Atlanta Avenue Tulsa, Oklahoma. Investigators believe this is an indicator the **Subject Parcel** contains illegal substances.

19. On July 17, 2025, United States Magistrate Judge Christine D. Little signed a search warrant for the subject parcel. A search of the parcel revealed that it contained approximately 9,859.9 gross grams of what agents recognized as suspected methamphetamine. The suspected methamphetamine was tested using a TruNarc test kit and tested presumptive positive for the presence of methamphetamine. The suspected methamphetamine will be submitted to the DEA lab for testing.

20. I request an anticipatory search warrant be issued for the above-described address, to be served if, and only if the following triggering events take place: The suspected methamphetamine will be replaced with a substance that is similar in weight and in appearance as the seized methamphetamine, also known as "sham."

An Undercover Agent/Officer will pose as UPS delivery personnel and deliver the parcel containing the imitation methamphetamine to the addressed location **3333 North Atlanta Avenue, Tulsa, Oklahoma**. After the UPS parcel is accepted, then and only then will the search warrant be served. At that time, your affiant believes probable cause will exist to search the above-described property.

21. I believe that when the "triggering event" is initiated, this affidavit is convincingly sufficient in establishing probable cause exists and justifies the issuance of a search warrant for the residence located at **3333 North Atlanta Avenue, Tulsa, Oklahoma.**

## Conclusion

22. Based on the information above, I submit that there is probable cause to search **3333 North Atlanta Avenue, Tulsa, Oklahoma**, Northern District of Oklahoma, as further described in Attachment A, and seize the items described in Attachment B.

I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

_____
Special Agent Wyatt Huffman
Drug Enforcement Administration

Subscribed and sworn to by phone on July __18__, 2025.

_____
JUDGE CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Premises to be Searched

### 3333 North Atlanta Avenue, Tulsa, Oklahoma

The residence to be searched is a single-family dwelling, located in the 3300 block of North Atlanta Avenue, Tulsa, Oklahoma, which is depicted in the picture below. The residence to be searched is the 5th structure North of East 33rd Street North and is located on the east side of North Atlanta Avenue. The residence to be searched is constructed of tan brick and grey trim, and a composite shingle roof. The front entry door of the residence to be searched is white in color, is located on the north side of the structure and faces northwest. The numbers '3333' are affixed to the front of the residence. The property to be searched is more commonly known as **3333 North Atlanta Avenue Tulsa, Oklahoma**, and is located in the Northern District of Oklahoma. Below is a picture of the property to be searched.



## ATTACHMENT B

## Description of Items to be Seized

All items that constitute evidence, instrumentalities, contraband, and/or fruits of violations of Title 21 U.S.C. §§ 841(a)(1) and and 841(b)(1)(A)(viii) – Attempted Possession of Methamphetamine with Intent to Distribute; and Title 21, U.S.C. 856(a)(1) and 856(b) – Maintaining a Drug Involved Premises United States Code, Sections 841(a)(1).

1. Documents showing ownership of real or personal property;

2. United States Currency or items reflecting drug proceeds;

3. Books, records, receipts, notes and other papers relating to the trafficking of narcotics even though these documents may be in code or in a different language other than English or in electronically stored data.

4. Contraband, including controlled substances, proceeds of drug sales, records of drug transactions, drug sources, drug customers, and other tangible items evidencing the obtaining, secreting, transfer and/or concealment of assets and/or money obtained through or used in the transportation, distribution, and sale of narcotics, including but not limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any corresponding records of account receivable, money paid or received, drugs supplied or received, cash received to be paid for controlled substances or intended to be paid for controlled substances, whether in paper form or

2

electronically stored data on computer discs, cellular telephones, or other storage media;

5. Items of personal property tending to establish the existence of a narcotics conspiracy including but not limited to personal telephone bills, photographs and documents and other items reflecting names, addresses, telephone numbers, and communications;

6. Paraphernalia for distributing, packaging and weighing narcotics. Equipment and materials used in the building or using concealed compartments;

7. Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

8. Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

9. Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long distance calls reflecting domestic and foreign travel;

10. Any and all appointment calendars;

11.     Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys, safes, any and all documents relating to banking activities and other financial transactions including the purchase of real estate and documents showing ownership of real estate;

12.     Records relating to employment, wages earned and paid and other compensation records. Records relating to local, state and federal personal and business income, sales and service taxes, including but not limited to, computations, notes and records used for tax purposes;

13.     Evidence of proceeds including items relating to maintaining, secreting, gathering or liquidating drug proceeds, particularly: financial records of withdrawals, funds of transfers, purchases, sales, transfers of assets or consolidation of assets. Liquid assets or evidence of them including currency, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, precious metals and jewelry, and documents relating to safe deposit boxes, stocks, bonds and other financial instruments;

14.     Evidence of the expenditure of money for the purchase of vehicles or evidence establishing an ownership interest in vehicles, including certificates of title, vehicle tag records, photographs and receipts of vehicle transactions;

15. Cellular telephones including electronically stored data on said telephones or other electronic storage devices such as PDA's or electronic organizers; electronic memory chips or storage chips or SIM cards used in cellular telephones and the data and information stored thereon.

16. Computers and data storage devices including discs, drives, CD's and DVD's and the electronically stored data thereon. The electronically kept information or data stored on electronic storage devices, computers or PDA's whether in files or disc, drives, in memory storage devices, in the drives or other electronic storage medium. E-mail, text messages or other notes or records whether financial or otherwise, accessible by computer or other communication services stored in files on hard drives, drives, CD, DVD, in the drives, or other electronic storage medium or device;

17. Firearms, ammunition and articles associated with the possession, ownership and use of firearms including, boxes, receipts, holsters, clips, and equipment.

18. If any electronic storage device, such as those listed in paragraphs 15 and 16, is seized during the search of the premises, a separate warrant will be sought before searching those storage devices for data.